J-A06028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: U.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.V., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2617 EDA 2024 |

Appeal from the Order Entered September 5, 2024
In the Court of Common Pleas of Pike County Civil Division at No(s):  CP-52-DP-0000023-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: N.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.V., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2618 EDA 2024 |

Appeal from the Order Entered September 5, 2024
In the Court of Common Pleas of Pike County Civil Division at No(s):  CP-52-DP-0000024-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: S.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.V., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2619 EDA 2024 |

Appeal from the Order Entered September 5, 2024
In the Court of Common Pleas of Pike County Civil Division at No(s):  CP-52-DP-0000025-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

|  | : |  |
|---|---|---|
|  | : |  |
|  | : |  |
| APPEAL OF: K.V., MOTHER | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | No. 2620 EDA 2024 |

Appeal from the Order Entered September 5, 2024
In the Court of Common Pleas of Pike County Civil Division at No(s):  CP-52-DP-0000026-2021

| IN THE INTEREST OF: S.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
|  | : |  |
|  | : |  |
|  | : |  |
| APPEAL OF: K.V., MOTHER | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | No. 2621 EDA 2024 |

Appeal from the Order Entered September 5, 2024
In the Court of Common Pleas of Pike County Civil Division at No(s):  CP-52-DP-0000027-2021

BEFORE:   PANELLA, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 30, 2025**

Appellant, K.V. ("Mother") appeals from the September 5, 2024 order that changed the permanency goal of her five children, thirteen-year-old U.G., eleven-year-old A.G., nine-year-old N.G., seven-year-old S.G., and five-year-old S.G. (collectively, "Children"), from Reunification to Adoption.[1]   Upon review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Children's father is not a party to this appeal.

- 2 -

We glean the following procedural and factual history from the trial court's Rule 1925(a) opinion and the certified record. Mother and S.G. ("Father") are parents to Children but are currently separated. In August 2021, the Pike County Children and Youth Services (the "Agency") obtained emergency custody of Children and placed then in foster care due to concerns over Mother's unstable mental health and parents' inadequate housing. In December of 2021, after Father secured adequate housing, the court determined that Father was ready, willing, and able to care for Children, ordered Children to be placed in Father's care, and terminated court-supervision. At the time, Mother was only minimally compliant with court-ordered services.

After the trial court dismissed supervision, Father returned Children to Mother's care. In March 2023, the Agency once again obtained emergency custody of Children and placed them together in a potentially pre-adoptive foster home. Since Children have been in placement, Mother has failed to comply with court-ordered objectives and failed to make any progress towards reunification. On September 4, 2025, after a hearing, the court found that Mother failed to comply with recommended mental health treatment, failed to participate in a parenting capacity evaluation, failed to attend parenting classes, failed to consistently attend visitation, did not currently have adequate housing after she was recently evicted, and that a goal change to Adoption would be in Children's best interest. On September 5, 2025, the

Court ordered the Agency to change Children's permanency goals from Reunification to Adoption.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises a sole issue for our review: "Whether the trial court erred as a matter of law in changing the goal from return home to parent or guardian to adoption." Mother's Br. at 11.

We review a trial court's decision to change a child's permanency goal to Adoption for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). In order to conclude that the trial court abused its discretion, this Court "must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record." *Interest of H.J.*, 206 A.3d 22, 25 (Pa. Super. 2019) (citation omitted). Our standard of review in dependency cases requires this Court "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *R.J.T.*, 9 A.3d at 1190. This Court is "not in a position to make the close calls based on fact-specific determinations." *Id.* Rather, "we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan." *Id.* Notably, even if this Court "would have made a

- 4 -

different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court." *Id.*

The overarching purpose of the Juvenile Act, which governs goal change requests, is "[t]o preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained." 42 Pa.C.S. § 6301(b)(1). At each dependency review hearing, the trial court must consider, *inter alia*, the continuing necessity for and appropriateness of the child's placement, the extent of compliance with the permanency plan, the extent of progress made toward alleviating the circumstances which necessitated the child's placement, the appropriateness and feasibility of the current placement goal for the child, the likely date the goal might be achieved, and the child's safety. 42 Pa.C.S. § 6351(f). The focus of goal change proceedings, like all dependency proceedings, is on "the safety, permanency, and well-being of the child and the best interests of the child must take precedence over all other considerations." *H.J.*, 206 A.3d at 25. "The parent's rights are secondary in a goal change proceeding." *In re R.M.G.*, 997 A.2d 339, 347 (Pa. Super. 2010) (citation and internal quotation marks omitted).

The Agency has the burden to show that a goal change would serve the child's best interests. *Id.* If reunification with the child's parent or guardian is not in the child's best interest, the trial court may determine that Adoption is the appropriate permanency goal. *H.J.*, 206 A.3d at 25; 42 Pa.C.S. § 6351(f.1)(2). Notably, "Adoption may not be an appropriate permanency goal

if severing an existent parent-child bond would have a detrimental effect on a child." *H.J.*, 206 A.3d at 25. Further, "[b]ecause the focus is on the child's best interests, a goal change to [A]doption might be appropriate, even when a parent substantially complies with a reunification plan." *R.M.G.*, 997 A.2d at 347.

This Court has held that placement in a pre-adoptive home should be completed within 18 months. *H.J.,* 206 A.3d at 25. "A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003) (citation omitted). "Thus, even where the parent makes earnest efforts, the court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *R.M.G*., 997 A.2d at 347 (citation and internal quotation marks omitted).

As an initial matter, Mother's argument section is substantially underdeveloped. To support her claims, Mother merely provides boilerplate law regarding permanency review hearings by citing Section 6351(f) of the Juvenile Act, which lists the "[m]atters to be determined at a permanency hearing." 42 Pa.C.S. § 6351(f). Under each subsection, Mother simply gives her opinion about what the trial court's finding should be without any citation to the record or relevant authority. As such, Mother fails to apply the facts of this case to the law that she provides to assert any actual trial court error with regards to the dispositions for Mother's five Children.

It is axiomatic that the argument portion of an appellate brief must be developed with citation to the record and relevant authority. Pa.R.A.P 2119(a)-(c). "The Rules of Appellate Procedure [] state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Commonwealth v. Martz*, 232 A.3d 801, 811 (Pa. Super. 2020) (citation omitted)*; see* Pa.R.A.P. 2111 (listing briefing requirements for appellate briefs) and Pa.R.A.P. 2119 (listing argument requirements for appellate briefs). "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review[,] a [c]ourt will not consider the merits thereof." *Branch Banking and Trust v. Gesiorski*, 904 A.2d 939, 942-43 (Pa. Super. 2006) (citation omitted). It is not the role of this Court to develop an appellant's argument where the brief provides mere cursory legal discussion. *Commonwealth v. Johnson*, 985 A.2d 915, 925 (Pa. 2009). This Court "will not act as counsel and will not develop arguments on behalf of an appellant." *In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012).

Because Mother fails to apply the law to the facts of this case in a meaningful and coherent manner with citation to the record as required by our Rules of Appellate Procedure and case law, we find that her issue is waived.

Even if this Court did not find Mother's issue to be waived, we discern no trial court error. After careful review of the parties' briefs, the applicable law, and the trial court's opinions, we conclude that there is no merit to the

issue that Mother has raised on appeal. In its Rule 1925(a) opinions, the trial court made factual findings that support changing Children's permanency goals to Adoption, and those findings are supported in the record.[2] Accordingly, even if we did not find waiver we would affirm on the basis of the trial court's October 21, 2024 opinions. *Id.* at 1-4 (finding that Children have been in care for seventeen months, Mother has made minimal compliance towards her goals, the three oldest Children wish to be adopted, Children are healthy and thriving in their foster home placement, Children cannot be safely returned to Mother's care in the foreseeable future, and a goal change to Adoption is in Children's best interest).

All parties are instructed to attach a copy of the October 21, 2024 trial court opinions to all future filings.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/30/2025

---

[2] The trial court issued a substantially similar Rule 1925(a) opinion with regards to each individual child. Our citation to the trial court opinion refers universally to the opinion issued for each child.

**IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY, PENNSYLVANIA
JUVENILE DIVISION**

In The Interest Of:                                 :
U████ G███ a minor,                          :          CP-52-DP-23-2021
APPEAL OF K.V., Mother                         :          2617 EDA 2024
                                                    :

---

**OPINION SUBMITTED PURSUANT TO PENNSYLVANIA RULE OF
APPELLATE PROCEDURE 1925**

**AND NOW**, this 2ᵛʳ day of October 2024, after thorough review of the record in the above-captioned matter, we continue to stand by our decision and respectfully request that the Superior Court affirm our Order dated September 4, 2024 (filed on September 5, 2024) which changes the goal in this matter from reunification with a concurrent goal of adoption to adoption alone. We believe that the Order, which was issued in the appropriate standardized form, adequately states our factual findings and legal conclusions. We respectfully refer the Superior Court to the same pursuant to Pennsylvania Rule of Civil Procedure No. 1925(a). In further response to the Concise Statement of the Matters Complained of on Appeal filed by the Appellant, we would like to add the following:

Contrary to Appellant's Concise Statement of Matters Complained of on Appeal, the record in this matter supports our determination that the goal change to adoption was in the best interest of the subject child. This child and her four siblings have been involved with our dependency court since August 2021. The undersigned has been the dependency judge presiding over this family throughout.

Mother and Father are separated. In August 2021, the child and her siblings were removed from Mother and placed in foster care. At the first permanency review hearing held on or December 7, 2021, Father, who was not the custodial parent at the time of the

removal, demonstrated that he had secured appropriate housing for this child and her four siblings. As such, the subject child and her siblings were placed in Father's physical custody and Court supervision was terminated one day later, December 8, 2021. It is significant to note that while supervision was terminated because of Father being able to take custody, Mother was only minimally compliant with the permanency plan and had made minimal progress to alleviate the circumstances necessitating placement during that review period. At some point after Court supervision was terminated, Father's actions resulted in the children ending up back in Mother's physical care.

This child was back in our Dependency Court as a result of the Agency filing a Petition for Emergency Shelter Care on March 9, 2023 which was granted. The Agency followed up with the filing of a Dependency Petition. On May 25, 2023, following a dependency hearing, the subject child and her four siblings were determined to be dependent children. Our determination that this child was dependent was appealed by Mother and affirmed by the Superior Court.

The child and her four siblings have now been in care for seventeen consecutive months. Placement continues to be necessary and appropriate with no foreseeable date by which the goal of reunification can be achieved. This child stated that she feels safe in her current foster home where her four siblings are also placed. This child is clear that she does not want to return to Mother's care. This child appears to the Court to be thriving since the removal from Mother's care. The goal change allows the Agency to focus on permanency for this child.

At our November 16, 2023 Permanency Review Hearing, Mother was found to be minimally compliant with the permanence plan and to have made no progress toward

alleviating the circumstances which necessitated placement. At our March 6, 2024 Permanency Review Hearing, Mother was found to not be in compliance with the plan and to have made no progress toward alleviating the circumstances which necessitated placement. At the September 4, 2024 Permanency Review and Goal Change Hearing, we again found Mother to have made no compliance with the plan and to have made no progress toward alleviating the circumstances which necessitated placement.

Mother has ongoing, untreated mental health concerns which she refuses to address. Mother adamantly refuses to complete the court-ordered parental fitness evaluation. The portion of the parental fitness evaluation which Mother did complete, led the evaluator, Dr. Church, to raise several serious concerns regarding Mother's ability to parent and her mental health. Further, Mother's home was in foreclosure at the time the child and her siblings were removed from Mother in March 2023. The home has since been foreclosed upon and Mother ejected. Mother has not secured alternate housing for this child. The Agency offered Mother services to address her mental health and housing issues to no avail.

Mother had supervised telephone contact with this child together with the child's sisters (the three oldest and only female children) which had to be stopped because Mother refused to engage in conversation with the child and would strictly read the Bible to her. Attempts to redirect Mother's telephone conversations failed. The child was having emotionally and behavioral issues following the telephone calls. Based upon the evidence presented we discontinued Mother's separate telephone conversations with the three oldest children and altered it to supervised telephone conversations between Mother and all five of the children together. Mother's willingness to participate in supervised visitation as arranged by the Agency had been inconsistent and limited and concerns during the limited

visitations which she has engaged were testified to throughout the permanency review hearings.

Mother has shown an ongoing, overall lack of compliance with the permanency plan and failure to alleviate the circumstances necessitating placement. Mother has not expressed a willingness to or ability to bring herself into compliance with the plan or to alleviate the circumstances necessitating placement in the foreseeable future. The goal of reunification is no longer appropriate or reasonably feasible.[1]

Based on our in-camera interviews with the child and her siblings, our observations of Mother, and Mother's own testimony, the child and her siblings cannot be safely returned to Mother in the foreseeable future. The Agency has made reasonable efforts to work toward reunification but has not received cooperation from Mother.

We prioritized the safety, permanency and well-being of this child in granting the goal change to adoption. We maintain that our decision was made in the best interest of this child. Based upon the record, we believe the goal change was appropriate, and we respectfully request that the Superior Court affirm our Order.

**BY THE COURT:**

HON. KELLY A. GAUGHAN, Jr.

cc:    John Martin, Esq., *for Mother/Appellant*
    Christian Weed, Esq., *for Father*
    Nicholas McIntyre, Esq., *for Pike County Children & Youth*
    Mark Moulton, Esq., *Guardian ad litem*
    Court Administration

---

[1] We note that Father failed to appear for the goal change hearing and has not appealed the same. Father does not have suitable housing for the child and has shown no intention of obtaining the same.

In The Interest Of:                    :
N██████ G██████, a minor,              :        CP-52-DP-24-2021
APPEAL OF K.V., Mother                 :        2618 EDA 2024
                                       :

---

## OPINION SUBMITTED PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925

**AND NOW**, this 21st day of October 2024, after thorough review of the record in the above-captioned matter, we continue to stand by our decision and respectfully request that the Superior Court affirm our Order dated September 4, 2024 (filed on September 5, 2024) which changes the goal in this matter from reunification with a concurrent goal of adoption to adoption alone. We believe that the Order, which was issued in the appropriate standardized form, adequately states our factual findings and legal conclusions. We respectfully refer the Superior Court to the same pursuant to Pennsylvania Rule of Civil Procedure No. 1925(a). In further response to the Concise Statement of the Matters Complained of on Appeal filed by the Appellant, we would like to add the following:

Contrary to Appellant's Concise Statement of Matters Complained of on Appeal, the record in this matter supports our determination that the goal change to adoption was in the best interest of the subject child. This child and her four siblings have been involved with our dependency court since August 2021. The undersigned has been the dependency judge presiding over this family throughout.

Mother and Father are separated. In August 2021, the child and her siblings were removed from Mother and placed in foster care. At the first permanency review hearing held on or December 7, 2021, Father, who was not the custodial parent at the time of the

Page 1 of 4

removal, demonstrated that he had secured appropriate housing for this child and her four siblings. As such, the subject child and her siblings were placed in Father's physical custody and Court supervision was terminated one day later, December 8, 2021. It is significant to note that while supervision was terminated because of Father being able to take custody, Mother was only minimally compliant with the permanency plan and had made minimal progress to alleviate the circumstances necessitating placement during that review period. At some point after Court supervision was terminated, Father's actions resulted in the children ending up back in Mother's physical care.

This child was back our Dependency Court as a result of the Agency filing a Petition for Emergency Shelter Care on March 9, 2023 which was granted. The Agency followed up with the filing of a Dependency Petition. On May 25, 2023, following a dependency hearing, the subject child and her four siblings were determined to be dependent children. Our determination that this child was dependent was appealed by Mother and affirmed by the Superior Court.

The child and her four siblings have now been in care for seventeen consecutive months. Placement continues to be necessary and appropriate with no foreseeable date by which the goal of reunification can be achieved. This child feels safe in her current foster home where her four siblings are also placed. This child does not wish to be returned to Mother. This child appears to the Court to be thriving since the removal from Mother's care. The goal change allows the Agency to focus on permanency for this child.

At our November 16, 2023 Permanency Review Hearing, Mother was found to be minimally compliant with the permanency plan and to have made no progress toward alleviating the circumstances which necessitated placement. At our March 6, 2024

Permanency Review Hearing, Mother was found to not be in compliance with the plan and to have made no progress toward alleviating the circumstances which necessitated placement. At the September 4, 2024 Permanency Review and Goal Change Hearing, we again found Mother to have made no compliance with the plan and to have made no progress toward alleviating the circumstances which necessitated placement.

Mother has ongoing, untreated mental health concerns which she refuses to address. Mother adamantly refuses to complete the court-ordered parental fitness evaluation. The portion of the parental fitness evaluation which Mother did complete, led the evaluator, Dr. Church, to raise several serious concerns regarding Mother's ability to parent and her mental health. Further, Mother's home was in foreclosure at the time the child and her siblings were removed from Mother in March 2023. The home has since been foreclosed upon and Mother ejected. Mother has not secured alternate housing for this child. The Agency offered Mother services to address her mental health and housing issues to no avail.

Mother had supervised telephone contact with this child together with the child's sisters (the three oldest and only female children) which had to be stopped because Mother refused to engage in conversation with the child and would strictly read the Bible to her. Attempts to redirect Mother's telephone conversations failed. The child was having emotionally and behavioral issues following the telephone calls. Based upon the evidence presented we discontinued Mother's separate telephone conversations with the three oldest children and altered it to supervised telephone conversations between Mother and all five of the children together. Mother's willingness to participate in supervised visitation as arranged by the Agency had been inconsistent and limited, and concerns about Mother's

conduct during those limited visits were testified to throughout the permanency review hearings.

Mother has shown an ongoing, overall lack of compliance with the permanency plan and failure to alleviate the circumstances necessitating placement. Mother has not expressed a willingness to or ability to bring herself into compliance with the plan or to alleviate the circumstances necessitating placement in the foreseeable future. The goal of reunification is no longer appropriate or reasonably feasible.[1]

Based on our in-camera interviews with the child and her siblings, our observations of Mother, and Mother's own testimony, the child and her siblings cannot be safely returned to Mother in the foreseeable future. The Agency has made reasonable efforts to work toward reunification but has not received cooperation from Mother.

We prioritized the safety, permanency and well-being of this child in granting the goal change to adoption. We maintain that our decision was made in the best interest of this child. Based upon the record, we believe the goal change was appropriate, and we respectfully request that the Superior Court affirm our Order.

**BY THE COURT:**

**HON. KELLY A. GAUGHAN, J.**

cc:    John Martin, Esq., *for Mother/Appellant*
     Christian Weed, Esq., *for Father*
     Nicholas McIntyre, Esq., *for Pike County Children & Youth*
     Mark Moulton, Esq., *Guardian ad litem*
     Court Administration

---

[1] We note that Father failed to appear for the goal change hearing and has not appealed the same. Father does not have suitable housing for the child and has shown no intention of obtaining the same.

In The Interest Of:                             :
A▮▮▮▮ G▮▮, a minor,                            :        CP-52-DP-26-2021
APPEAL OF K.V., Mother                          :        2620 EDA 2024
                                                :

---

## OPINION SUBMITTED PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925

**AND NOW,** this ⏜21st⏝ day of October 2024, after thorough review of the record in the above-captioned matter, we continue to stand by our decision and respectfully request that the Superior Court affirm our Order dated September 4, 2024 (filed on September 5, 2024) which changes the goal in this matter from reunification with a concurrent goal of adoption to adoption alone. We believe that the Order, which was issued in the appropriate standardized form, adequately states our factual findings and legal conclusions. We respectfully refer the Superior Court to the same pursuant to Pennsylvania Rule of Civil Procedure No. 1925(a). In further response to the Concise Statement of the Matters Complained of on Appeal filed by the Appellant, we would like to add the following:

Contrary to Appellant's Concise Statement of Matters Complained of on Appeal, the record in this matter supports our determination that the goal change to adoption was in the best interest of the subject child. This child and her four siblings have been involved with our dependency court since August 2021. The undersigned has been the dependency judge presiding over this family throughout.

Mother and Father are separated. In August 2021, the child and her siblings were removed from Mother and placed in foster care. At the first permanency review hearing held on or December 7, 2021, Father, who was not the custodial parent at the time of the

removal, demonstrated that he had secured appropriate housing for this child and her four siblings. As such, the subject child and her siblings were placed in Father's physical custody and Court supervision was terminated one day later, December 8, 2021. It is significant to note that while supervision was terminated because of Father being able to take custody, Mother was only minimally compliant with the permanency plan and had made minimal progress to alleviate the circumstances necessitating placement during that review period. At some point after Court supervision was terminated, Father's actions resulted in the children ending up back in Mother's physical care.

This child was back our Dependency Court as a result of the Agency filing a Petition for Emergency Shelter Care on March 9, 2023 which was granted. The Agency followed up with the filing of a Dependency Petition. On May 25, 2023, following a dependency hearing, the subject child and her four siblings were determined to be dependent children. Our determination that this child was dependent was appealed by Mother and affirmed by the Superior Court.

The child and her four siblings have now been in care for seventeen consecutive months. Placement continues to be necessary and appropriate with no foreseeable date by which the goal of reunification can be achieved. This child feels safe in her current foster home where her four siblings are also placed. This child does not wish to be reunified with Mother. This child appears to the Court to be thriving since the removal from Mother's care. The goal change allows the Agency to focus on permanency for this child.

At our November 16, 2023 Permanency Review Hearing, Mother was found to be minimally compliant with the permanency plan and to have made no progress toward alleviating the circumstances which necessitated placement. At our March 6, 2024

Permanency Review Hearing, Mother was found to not be in compliance with the plan and to have made no progress toward alleviating the circumstances which necessitated placement. At the September 4, 2024 Permanency Review and Goal Change Hearing, we again found Mother to have made no compliance with the plan and to have made no progress toward alleviating the circumstances which necessitated placement.

Mother has ongoing, untreated mental health concerns which she refuses to address. Mother adamantly refuses to complete the court-ordered parental fitness evaluation. The portion of the parental fitness evaluation which Mother did complete, led the evaluator, Dr. Church, to raise several serious concerns regarding Mother's ability to parent and her mental health. Further, Mother's home was in foreclosure at the time the child and her siblings were removed from Mother in March 2023. The home has since been foreclosed upon and Mother ejected. Mother has not secured alternate housing for this child. The Agency offered Mother services to address her mental health and housing issues to no avail.

Mother had supervised telephone contact with this child together with the child's sisters (the three oldest and only female children) which had to be stopped because Mother refused to engage in conversation with the child and would strictly read the Bible to her. Attempts to redirect Mother's telephone conversations failed. The child was having emotionally and behavioral issues following the telephone calls. Based upon the evidence presented we discontinued Mother's separate telephone conversations with the three oldest children and altered it to supervised telephone conversations between Mother and all five of the children together. Mother's willingness to participate in supervised visitation as arranged by the Agency was inconsistent and limited, and concerns regarding Mother's

conduct during those limited visits was testified to throughout the permanency review hearings.

Mother has shown an ongoing, overall lack of compliance with the permanency plan and failure to alleviate the circumstances necessitating placement. Mother has not expressed a willingness to or ability to bring herself into compliance with the plan or to alleviate the circumstances necessitating placement in the foreseeable future. The goal of reunification is no longer appropriate or reasonably feasible.[1]

Based on our in-camera interviews with the child and her siblings, our observations of Mother, and Mother's own testimony, the child and her siblings cannot be safely returned to Mother in the foreseeable future. The Agency has made reasonable efforts to work toward reunification but has not received cooperation from Mother.

We prioritized the safety, permanency and well-being of this child in granting the goal change to adoption. We maintain that our decision was made in the best interest of this child. Based upon the record, we believe the goal change was appropriate, and we respectfully request that the Superior Court affirm our Order.

**BY THE COURT:**

**HON. KELLY A. GAUGHAN, J.**

cc:    John Martin, Esq., *for Mother/Appellant*
        Christian Weed, Esq., *for Father*
        Nicholas McIntyre, Esq., *for Pike County Children & Youth*
        Mark Moulton, Esq., *Guardian ad litem*
        Court Administration

---

[1] We note that Father failed to appear for the goal change hearing and has not appealed the same. Father does not have suitable housing for the child and has shown no intention of obtaining the same.

In The Interest Of:            :

S██████ G█████, a minor,      :      CP-52-DP-27-2021

APPEAL OF K.V., Mother       :      2621 EDA 2024

                                         :

## OPINION SUBMITTED PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925

**AND NOW**, this 21st day of October 2024, after thorough review of the record in the above-captioned matter, we continue to stand by our decision and respectfully request that the Superior Court affirm our Order dated September 4, 2024 (filed on September 5, 2024) which changes the goal in this matter from reunification with a concurrent goal of adoption to adoption alone. We believe that the Order, which was issued in the appropriate standardized form, adequately states our factual findings and legal conclusions. We respectfully refer the Superior Court to the same pursuant to Pennsylvania Rule of Civil Procedure No. 1925(a). In further response to the Concise Statement of the Matters Complained of on Appeal filed by the Appellant, we would like to add the following:

Contrary to Appellant's Concise Statement of Matters Complained of on Appeal, the record in this matter supports our determination that the goal change to adoption was in the best interest of the subject child. This child and his four siblings have been involved with our dependency court since August 2021. The undersigned has been the dependency judge presiding over this family throughout.

Mother and Father are separated. In August 2021, this child and his siblings were removed from Mother and placed in foster care. At the first permanency review hearing held on or December 7, 2021, Father, who was not the custodial parent at the time of the

removal, demonstrated that he had secured appropriate housing for this child and his four siblings. As such, the subject child and his siblings were placed in Father's physical custody and Court supervision was terminated one day later, December 8, 2021. It is significant to note that while supervision was terminated because of Father being able to take custody, Mother was only minimally compliant with the permanency plan and had made minimal progress to alleviate the circumstances necessitating placement during that review period. At some point after Court supervision was terminated, Father's actions resulted in the child and his siblings ending up back in Mother's physical care.

This child was back in our Dependency Court as a result of the Agency filing a Petition for Emergency Shelter Care on March 9, 2023 which was granted. The Agency followed up with the filing of a Dependency Petition. On May 25, 2023, following a dependency hearing, the subject child and his four siblings were determined to be dependent children. Our determination that this child was dependent was appealed by Mother and affirmed by the Superior Court.

The child and his four siblings have now been in care for seventeen consecutive months. Placement continues to be necessary and appropriate with no foreseeable date by which the goal of reunification can be achieved. This child is still young and immature. The child was not able to offer the Court anything persuasive regarding the goal change, but based on our observations, the child appears to be healthy and thriving since the removal from Mother's care. The goal change allows the Agency to focus on permanency for this child.

At our November 16, 2023 Permanency Review Hearing, Mother was found to be minimally compliant with the permanency plan and to have made no progress toward

alleviating the circumstances which necessitated placement. At our March 6, 2024 Permanency Review Hearing, Mother was found to not be in compliance with the plan and to have made no progress toward alleviating the circumstances which necessitated placement. At the September 4, 2024 Permanency Review and Goal Change Hearing, we again found Mother to have made no compliance with the plan and to have made no progress toward alleviating the circumstances which necessitated placement.

Mother has ongoing, untreated mental health concerns which she refuses to address. Mother adamantly refuses to complete the court-ordered parental fitness evaluation. The portion of the parental fitness evaluation which Mother did complete, led the evaluator, Dr. Church, to raise several serious concerns regarding Mother's ability to parent and her mental health. Further, Mother's home was in foreclosure at the time the child and his siblings were removed from Mother in March 2023. The home has since been foreclosed upon and Mother ejected. Mother has not secured alternate housing for this child. The Agency offered Mother services to address her mental health and housing issues to no avail.

Mother's willingness to participate in supervised visitation with this child, as arranged by the Agency, has been inconsistent and limited. Concerns regarding Mother's conduct with the child during these limited visits was testified to throughout the permanency review hearings.

Mother has shown an ongoing, overall lack of compliance with the permanency plan and failure to alleviate the circumstances necessitating placement. Mother has not expressed a willingness to or ability to bring herself into compliance with the plan or to alleviate the

circumstances necessitating placement in the foreseeable future. The goal of reunification is no longer appropriate or reasonably feasible.[1]

Based on our in-camera interviews with the child and his siblings, our observations of Mother, and Mother's own testimony, the child and his siblings cannot be safely returned to Mother in the foreseeable future. The Agency has made reasonable efforts to work toward reunification but has not received cooperation from Mother.

We prioritized the safety, permanency and well-being of this child in granting the goal change to adoption. We maintain that our decision was made in the best interest of this child. Based upon the record, we believe the goal change was appropriate, and we respectfully request that the Superior Court affirm our Order.

**BY THE COURT:**

_____
HON. KELLY A. GAUGHAN, J.

cc: John Martin, Esq., *for Mother/Appellant*
  Christian Weed, Esq., *for Father*
  Nicholas McIntyre, Esq., *for Pike County Children & Youth*
  Mark Moulton, Esq., *Guardian ad litem*
  Court Administration

---

[1] We note that Father failed to appear for the goal change hearing and has not appealed the same. Father does not have suitable housing for the child and has shown no intention of obtaining the same.

# IN THE COURT OF COMMON PLEAS OF
# PIKE COUNTY, PENNSYLVANIA
# JUVENILE DIVISION

In The Interest Of:                          :
S██████ G██, a minor,                       :      CP-52-DP-25-2021
APPEAL OF K.V., Mother                       :      2619 EDA 2024
                                             :

---

## OPINION SUBMITTED PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925

**AND NOW**, this ⟨2V⟩ day of October 2024, after thorough review of the record in the above-captioned matter, we continue to stand by our decision and respectfully request that the Superior Court affirm our Order dated September 4, 2024 (filed on September 5, 2024) which changes the goal in this matter from reunification with a concurrent goal of adoption to adoption alone. We believe that the Order, which was issued in the appropriate standardized form, adequately states our factual findings and legal conclusions. We respectfully refer the Superior Court to the same pursuant to Pennsylvania Rule of Civil Procedure No. 1925(a). In further response to the Concise Statement of the Matters Complained of on Appeal filed by the Appellant, we would like to add the following:

Contrary to Appellant's Concise Statement of Matters Complained of on Appeal, the record in this matter supports our determination that the goal change to adoption was in the best interest of the subject child. This child and his four siblings have been involved with our dependency court since August 2021. The undersigned has been the dependency judge presiding over this family throughout.

Mother and Father are separated. In August 2021, this child and his siblings were removed from Mother and placed in foster care. At the first permanency review hearing held on or December 7, 2021, Father, who was not the custodial parent at the time of the

# 130

removal, demonstrated that he had secured appropriate housing for this child and his four siblings. As such, the subject child and his siblings were placed in Father's physical custody and Court supervision was terminated one day later, December 8, 2021. It is significant to note that while supervision was terminated because of Father being able to take custody, Mother was only minimally compliant with the permanency plan and had made minimal progress to alleviate the circumstances necessitating placement during that review period. At some point after Court supervision was terminated, Father's actions resulted in the child and his siblings ending up back in Mother's physical care.

This child was back in our Dependency Court as a result of the Agency filing a Petition for Emergency Shelter Care on March 9, 2023 which was granted. The Agency followed up with the filing of a Dependency Petition. On May 25, 2023, following a dependency hearing, the subject child and his four siblings were determined to be dependent children. Our determination that this child was dependent was appealed by Mother and affirmed by the Superior Court.

The child and his four siblings have now been in care for seventeen consecutive months. Placement continues to be necessary and appropriate with no foreseeable date by which the goal of reunification can be achieved. This child is very active and has difficultly focusing. The child is still young and immature. The child was not able to offer the Court anything persuasive regarding the goal change, but based on our observations, the child appears to be healthy and thriving since the removal from Mother's care. The goal change allows the Agency to focus on permanency for this child.

At our November 16, 2023 Permanency Review Hearing, Mother was found to be minimally compliant with the permanency plan and to have made no progress toward

alleviating the circumstances which necessitated placement. At our March 6, 2024 Permanency Review Hearing, Mother was found to not be in compliance with the plan and to have made no progress toward alleviating the circumstances which necessitated placement. At the September 4, 2024 Permanency Review and Goal Change Hearing, we again found Mother to have made no compliance with the plan and to have made no progress toward alleviating the circumstances which necessitated placement.

Mother has ongoing, untreated mental health concerns which she refuses to address. Mother adamantly refuses to complete the court-ordered parental fitness evaluation. The portion of the parental fitness evaluation which Mother did complete, led the evaluator, Dr. Church, to raise several serious concerns regarding Mother's ability to parent and her mental health. Further, Mother's home was in foreclosure at the time the child and his siblings were removed from Mother in March 2023. The home has since been foreclosed upon and Mother ejected. Mother has not secured alternate housing for this child. The Agency offered Mother services to address her mental health and housing issues to no avail.

Mother's willingness to participate in supervised visitation with this child, as arranged by the Agency, has been inconsistent and limited. Concerns regarding Mother's conduct with the child during these limited visits was testified to throughout the permanency review hearings.

Mother has shown an ongoing, overall lack of compliance with the permanency plan and failure to alleviate the circumstances necessitating placement. Mother has not expressed a willingness to or ability to bring herself into compliance with the plan or to alleviate the

circumstances necessitating placement in the foreseeable future. The goal of reunification is no longer appropriate or reasonably feasible.[1]

Based on our in-camera interviews with the child and his siblings, our observations of Mother, and Mother's own testimony, the child and his siblings cannot be safely returned to Mother in the foreseeable future. The Agency has made reasonable efforts to work toward reunification but has not received cooperation from Mother.

We prioritized the safety, permanency and well-being of this child in granting the goal change to adoption. We maintain that our decision was made in the best interest of this child. Based upon the record, we believe the goal change was appropriate, and we respectfully request that the Superior Court affirm our Order.

**BY THE COURT:**

**HON. KELLY A. GAUGHAN, J.**

cc:    John Martin, Esq., *for Mother/Appellant*
      Christian Weed, Esq., *for Father*
      Nicholas McIntyre, Esq., *for Pike County Children & Youth*
      Mark Moulton, Esq., *Guardian ad litem*
      Court Administration

---

[1] We note that Father failed to appear for the goal change hearing and has not appealed the same. Father does not have suitable housing for the child and has shown no intention of obtaining the same.